**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FLORIDA STATE UNIVERSITY; AND THE FLORIDA STATE UNIVERSITY BOARD OF TRUSTEES, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiffs FLORIDA STATE UNIVERSITY and THE FLORIDA STATE UNIVERSITY BOARD OF TRUSTEES, (collectively, "Plaintiffs") hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A attached hereto (collectively, "Defendants"):

### INTRODUCTION

1.      This action has been filed by Plaintiffs to combat online counterfeiters who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' FLORIDA STATE UNIVERSITY ("FSU") trademarks, which are covered by, amongst others, U.S. Trademark Registration Nos. 4984064, 2623851, 1276238, 2641958,

3816492, 2803985 (collectively, the "FSU Trademarks"). The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the FSU Trademark are attached hereto as **Exhibit 1**.

2.    Defendants are improperly advertising, marketing and/or selling unauthorized and illegal products (the "Counterfeit Products") either by reference to or embodying a mark that is identical or substantially identical to at least one of the FSU Trademarks, which causes further confusion and deception in the marketplace.

3.    Defendants have created numerous fully interactive commercial internet stores operating under the online marketplace accounts (the "Defendant Internet Stores") and using the account names identified in Schedule A attached hereto (collectively, the "Defendants").

4.    Defendants design the online marketplace accounts to appear to be selling Plaintiffs' genuine FSU Products (the "FSU Products"), while selling inferior imitations of such products.

5.    Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

6.    Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of the FSU Trademarks as well as to protect unknowing consumers from purchasing Counterfeit Products.

7.     As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks and goodwill and, therefore, seek injunctive and monetary relief.

8.     This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District.

9.     In addition, each Defendant has offered to sell and ship and/or sold and shipped infringing products into this Judicial District.

## SUBJECT MATTER JURISDICTION

10.     This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

11.     This Court has jurisdiction over the deceptive trade practices claim in this action that arises under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claim is so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION AND VENUE

12.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to 735 ILCS 5/2-209, or in the alternative Fed. R. Civ. P. 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Illinois and in this Judicial District, and/or derive substantial revenue from business transactions in Illinois and in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State

of Illinois such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiffs in Illinois and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Illinois and this Judicial District, for example:

a.  The Defendant Internet Stores that each Defendant operates accept orders of Counterfeit Products from and offer shipping to Illinois addresses located in this Judicial District. Screenshots of the shopping cart from Defendant Internet Stores allowing Counterfeit Products to be shipped to this Judicial District are attached to the declaration of Katie Pugh ("Pugh Decl."), filed contemporaneously herewith, as **Exhibit 2**.

b.  Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Illinois, in this Judicial District, through accounts with online marketplace platforms such as abayamzclothing.com, aliexpress.com, damalec.com, dhgate.com, fansportmade.com, liveshoppingstar.com, nexttopsport.com, sportfanstock.com, team-pride.com, topamazingdesign.com, topshoppingfan.com, universitysupplies.co, wish.com, and worldrugbyshop.com (the "Platforms") as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Account(s)"), through which consumers in the U.S., including Illinois

4

(and more particularly, in this Judicial District), can view the one or more of Defendant Internet Stores, uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra*) and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including Illinois (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including Illinois (and more particularly, in this Judicial District).

c. Upon information and belief, Defendants have transacted business with consumers located in the United States, including Illinois (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Defendants have committed acts of trademark infringement in this Judicial District, do substantial business in the Judicial District, have registered agents in this Judicial District, and reside or may be found in this district.

## PLAINTIFFS

14. Plaintiff FLORIDA STATE UNIVERSITY ("FSU"), is part of the State University System of Florida, established pursuant to Florida Statute, with its main campus located in Tallahassee, Florida. FSU is the registered owner of at least a portion of the FSU Trademarks referred to above and with their federal registrations attached as Exhibit 1.

15. Plaintiff FLORIDA STATE UNIVERSITY BOARD OF TRUSTEES ("BOARD OF TRUSTEES"), is the governing body of plaintiff FSU. BOARD OF TRUSTEES is the

registered owner of at least a portion of the FSU Trademarks referred to above and with their federal registrations attached as Exhibit 1.

16.     Plaintiffs are, amongst other things, responsible for the procurement and manufacturing of FSU apparel, merchandise, and gifts, and have earned an international reputation for quality, reliability and value. FSU is home to some of the most popular college sports teams in the United States and as such, attracts attention from fans all across the world. For instance, FSU is a member of the Atlantic Coast Conference, where its Seminoles football team represents FSU in the NCAA Division I Football Bowl Subdivision of the National Collegiate Athletic Association.

## THE FSU PRODUCTS

17.     Plaintiffs are the official source of FSU products in the United States, including but not limited to the following exemplary products:





Ships Free

Ready to Ship

$99⁹⁹

#1 Florida State Seminoles Nike Game Jersey - Garnet

🏆 Most Popular in Jerseys



Ready to Ship

■ ■

Reduced: $25⁰⁰
Regular: $49⁹⁹

Florida State Seminoles Colosseum Lantern Pullover Hoodie - Black

🏆 Most Popular in Sweatshirts & Fleece



Ready to Ship

Reduced: $20⁰⁰
Regular: $39⁹⁹

Florida State Seminoles Fanatics Branded School Logo Sweatpants - Garnet

🏆 Most Popular in Shorts & Pants



Reduced: $35⁹⁹
Regular: $44⁹⁹

Florida State Seminoles Women's Call the Shots Luxe Boyfriend Long Sleeve T-Shirt - Charcoal



Ready to Ship

Reduced: $35⁰⁰
Regular: $69⁹⁹

Florida State Seminoles Concepts Sport Meter Long Sleeve T-Shirt & Pants Sleep Set - Garnet/Heathered Charcoal

🏆 Most Popular in Blankets, Bed & Bath



Ready to Ship

$29⁹⁹

Florida State Seminoles Nike Veterans Day T-Shirt - Black



18.     The FSU Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiffs, and Plaintiffs have and continue to widely market and promote the FSU Trademarks in the industry and to consumers. Plaintiffs' promotional efforts include — by way of example but not limitation — substantial print media, the FSU Products' website and social media sites, and point of sale materials.

19.     The FSU Trademarks are distinctive and identify the merchandise as goods from Plaintiffs. The registrations for the FSU Trademarks constitutes *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use those trademarks pursuant to 15 U.S.C. § 1057(b).

20.     The FSU Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and the trademarks have been continuously used and never abandoned.

21.     Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the FSU Trademarks. As a result, products bearing the FSU Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs.

**THE DEFENDANTS**

22.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

23.     Defendants are merchants on the abayamzclothing.com, aliexpress.com, damalec.com, dhgate.com, fansportmade.com, liveshoppingstar.com, nexttopsport.com, sportfanstock.com, team-pride.com, topamazingdesign.com, topshoppingfan.com, universitysupplies.co, wish.com, and worldrugbyshop.com (the "Platforms") online marketplace platforms, which, upon information and belief, are owned by:

        a.    Abayamzclothing.com ("abayamzclothing"), is a website registered under Privacyguardian.org with a registration address of 1928 E. Highland Ave. Ste. F104 PMB# 255, Phoenix, AZ, 85016;

        b.    Aliexpress.com ("aliexpress") is a website registered to Alibaba Cloud Computing (Beijing) Co., Ltd. with a registration address in Guang Xi, China;

        c.    Damalec.com ("damalec") is a website registered to NAMECHEAP Inc with a registration address in Beijing, China;

        d.    Dhgate.com ("dhgate") is a website registered to eName Technology Co., Ltd. with a registration address in Beijing, China;

        e.    Fansportmade.com ("fansportmade") is a website registered to NAMECHEAP Inc with a registration address in Reykjavik, Iceland;

        f.    liveshoppingstar.com ("liveshoppingstar") is a website registered to NAMECHEAP Inc with a registration address in Reykjavik, Iceland;

        g.    nexttopsport.com ("nexttopsport") is a website registered to NAMECHEAP Inc with a registration address in Reykjavik, Iceland;

h.  sportfanstock.com ("sportfanstock") is a website registered to NAMECHEAP Inc with a registration address in Reykjavik, Iceland;

i.  team-pride.com ("team-pride") is a website registered to NAMECHEAP Inc with a registration address in Reykjavik, Iceland;

j.  topamazingdesign.com ("topamazingdesign") is a website registered to NAMECHEAP Inc with a registration address in Reykjavik, Iceland;

k.  topshoppingfan.com ("topshoppingfan") is a website registered to NAMECHEAP Inc with a registration address in Reykjavik, Iceland;

l.  universitysupplies.co ("universitysupplies") is a website registered to Tucows Domains Inc with a registration address of 96 Mowat Ave Toronto, Ontario, Canada M6K 3M1;

m.  ContextLogic, Inc., doing business as Wish.com ("Wish"), is a Delaware corporation with a principal place of business at One Sansome Street, 40th Floor, San Francisco, CA 94104; and

n.  worldrugbyshop.com ("worldrugbyshop") is a website registered to Google LLC with a registration address of 96 Mowat Ave Toronto, Ontario, Canada M6K 3M1.

### THE DEFENDANTS' UNLAWFUL CONDUCT

24.  The success of the FSU Products has resulted in significant counterfeiting.

25.  Plaintiffs have identified numerous domain names linked to fully interactive websites and marketplace listings on the Platforms including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit FSU Products to consumers in this Judicial District and throughout the United States.

26. Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores. In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

27. On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine FSU Products.

28. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

29. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

30. Plaintiffs have not licensed or authorized Defendants to use the FSU Trademarks and none of the Defendants are authorized retailers of genuine FSU Products.

31. On personal knowledge and belief, Defendants deceive unknowing consumers by using the FSU Trademarks without authorization within the product descriptions of their

Defendant Internet Stores to attract customers, as well as in some instances, embodied by the Counterfeit Products themselves.

32.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using the FSU Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for FSU Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine FSU Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, where appropriate, Plaintiffs also seek to disable Defendant Internet Stores owned by Defendants that are the means by which the Defendants could continue to sell counterfeit FSU Products into this District.

33.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

34.     For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

35.     And many Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses.

12

36.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

37.     In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

38.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

39.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.

40.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.

41.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2018 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled a sharp increase in the

number of small packages of counterfeit goods shipped through the mail and express carriers as opposed to larger shipping containers.

42.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as e-commerce accounts, such as PayPal, for example, behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

43.     On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their e-commerce and PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

44.     Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the FSU Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

45.     Each Defendant Internet Store offers shipping to the United States, including Illinois (in this Judicial District) and, on information and belief, each Defendant has offered to sell counterfeit FSU Products into the United States, including Illinois (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

### FIRST CAUSE OF ACTION
### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)
### [Against Defendants Designated in Schedule A]

46.     Plaintiffs repeat and incorporate by reference herein the allegations contained in paragraphs 1–45 of this Complaint.

47.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered FSU Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The FSU Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' products provided under the FSU Trademarks.

48.    Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the FSU Trademarks without Plaintiffs' permission.

49.    Plaintiff FSU is the registered owner of the FSU Trademarks and Plaintiffs are the official source of FSU Products. The United States Registrations for the FSU Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in the FSU Trademarks and are willfully infringing and intentionally using counterfeits of the FSU Trademarks. Defendants' willful, intentional, and unauthorized use of the FSU Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

50.    Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

51.    The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit FSU Products.

52.    Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known FSU Trademarks.

## SECOND CAUSE OF ACTION
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A))
### [Against Defendants Designated in Schedule A]

53.     Plaintiffs repeat and incorporate by reference herein the allegations contained in paragraphs 1–52 of this Complaint.

54.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit FSU Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' counterfeit FSU Products by Plaintiffs.

55.     By using the FSU Trademarks in connection with the sale of counterfeit FSU Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit FSU Products.

56.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit FSU Products to the general public under 15 U.S.C. §§ 1114, 1125.

57.     Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of the FSU brand.

## THIRD CAUSE OF ACTION
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES
### (815 ILCS § 510/1, et seq.)
### [Against Defendants Designated in Schedule A]

58.     Plaintiffs repeat and incorporate by reference herein the allegations contained in paragraphs 1–57 of this Complaint.

59.     Plaintiffs have not licensed or authorized Defendants to use the FSU Trademarks and none of the Defendants are authorized retailers of genuine FSU Products.

60.     Defendants knowingly and intentionally trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' FSU Trademarks.

61.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

62.     Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of counterfeit FSU Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

63.     In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiffs' products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking FSU Products to Defendants' online marketplace accounts; (ii) using deceptive advertising practices within the text and metadata of the online marketplace accounts; and (iii) taking other steps to deceive and confuse the consuming public.

64.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

65.     The foregoing acts of Defendants constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

66.     Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.  using the FSU Trademarks or any mark substantially identical or confusingly similar to the FSU Trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine FSU Product or is not authorized by Plaintiffs to be sold in connection with the FSU Trademarks;

b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine FSU product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the FSU Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' counterfeit FSU Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d.  further infringing the FSU Trademarks and damaging Plaintiffs' goodwill;

e.  otherwise competing unfairly with Plaintiffs in any manner;

f.  shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any Plaintiffs trademark including any one of the FSU Trademarks or any marks substantially identical or confusingly similar to any of the FSU Trademarks;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or Online Marketplace Account, that is being used to sell or is the means by which Defendants could continue to sell counterfeit FSU Products; and

h.  operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing any of the FSU Trademarks or any marks substantially identical or confusingly similar to any of the FSU Trademarks that is not a genuine FSU Product or not authorized by Plaintiffs to be sold in connection with any of the FSU Trademarks.

2.  Entry of an Order that abayamzclothing.com, aliexpress.com, damalec.com, dhgate.com, fansportmade.com, liveshoppingstar.com, nexttopsport.com, sportfanstock.com, topamazingdesign.com, topshoppingfan.com, universitysupplies.co, wish.com, worldrugbyshop.com, and any other online marketplace account provider:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any

accounts associated with the Defendants listed on Schedule A to the Complaint;

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products; and

c.  take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

3.  That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the FSU Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

4.  In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the FSU Trademarks;

5.  That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

6.  Award any and all other relief that this Court deems just and proper.


Dated:  March 8, 2022                          Respectfully submitted,

                                               THOITS LAW

                                               By:___/s/David E. Hutchinson_____
                                                     David E. Hutchinson
                                                     47 W Polk Street, Ste 100 #221
                                                     Chicago, IL 60605
                                                     (650) 327 4200
                                                     dhutchinson@thoits.com

Harry Moren
Christopher Tom
400 Main Street, Suite 250
Los Altos, CA 94022
(650) 327 4200
hmoren@thoits.com
ctom@thoits.com

*Attorneys for Plaintiffs*
*Florida State University and The*
*Florida State University Board of*
*Trustees*